# EXHIBIT A

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF ILLINOIS

3                   URBANA DIVISION

4    MORRIS TYSON,                )

5              Plaintiff,         )

6      vs.                        )   No.

7    KENCO LOGISTIC SERVICES,     )   15-cv-2288-CSB-EIL

8    et al.,                      )

9              Defendants.        )

10        The deposition of MORRIS TYSON, called

11   for examination pursuant to the Rules of Civil

12   Procedure for the United States District Courts

13   pertaining to the taking of depositions, taken

14   before Jacqueline Shenberger, Certified

15   Shorthand Reporter within and for the County of

16   Cook and State of Illinois, at 150 North

17   Michigan Avenue, Illinois, on May 17, 2017, at

18   the hour of 9:32 A.M.

19

20

21

22

23   Jacqueline Shenberger

24   License No:   084-001524

Page 13

1    remember, you don't remember.  Okay?

2        A.   Okay.

3        Q.   If you need to take a break at any

4    point, just let me know and we can accommodate

5    that.  All that you need is to finish answering

6    the question before you take a break?

7        A.   Okay.

8        Q.   Okay.  So do you understand the

9    instructions?

10       A.   Yes, I do.

11       Q.   Do you have any questions about them?

12       A.   No, not at this time.

13       Q.   Okay.  If you do, will you let me know?

14       A.   Yes, I will.

15       Q.   Are you suffering from any illness or

16   condition that would affect your ability to

17   testify truthfully today?

18       A.   No.

19       Q.   Are you taking any medications that

20   would affect your ability to testify truthfully

21   today?

22       A.   No.

23       Q.   So there's no reason that you can't

24   give accurate and truthful testimony today,

Page 107

1      A.   Yes.

2      Q.   Okay.  And when you say working, you

3   were still working the day shift?  When you

4   returned from medical leave you were working --

5   at some point you started working the day shift?

6      A.   I started working the shift, not right

7   after I came back, they had me on the night

8   shift.

9      Q.   Okay.  And so how long did you work on

10   the night shift when you came back?

11      A.   I worked like a weekend shift, I worked

12   like a couple of weeks of doing this, because I

13   filed my Complaint shortly after that.

14      VIDEOGRAPHER:  Excuse me, Counsel, we have to

15   end this tape.  Okay.  The time is 11:25 AM.

16   This is the end of tape 1.  We're going off the

17   video record.

18                    (Whereupon, a short break was

19                     taken.)

20      VIDEOGRAPHER:  Okay.  Stand by, please.

21          The time is 11:57 AM.  This is the

22   beginning of tape 2 and we're back on the video

23   record.

24   BY MS. MORAN:

Page 204

1      Q.    And so you're saying that window

2   spotters wouldn't have to enter that?

3      A.    No, all we have to do is enter the

4   truck number and all the information show up.

5      Q.    And what about the trailers moving to

6   and from the doors, data entry on that?

7      A.    We had computers inside the trucks.

8      Q.    Right.  So what did you -- you have to

9   type that stuff in?

10      A.    Put in a number.

11      Q.    Just a number?

12      A.    Just a number.  Everything jump up that

13   was on the truck.

14      Q.    Okay.  So you didn't have to write or

15   type out lists of the moves to be provided to

16   the spotters?

17      A.    No.

18      Q.    Okay.

19      VIDEOGRAPHER:  Excuse me, Counselor, we have

20   to end this tape.

21      MS. MORAN:  Okay.

22      VIDEOGRAPHER:  The time is 1:32 PM, this is

23   the end of tape 2.  And we are going off the

24   video record.

Page 205

1                    (Whereupon, a short break was
2                    taken.)
3        VIDEOGRAPHER:  Okay.  The time is 2:21 PM.
4    This is the beginning of tape 3 and we are back
5    on the video record.
6    BY MS. MORAN:
7        Q.    Mr. Tyson, how are you feeling, better?
8        A.    Better.
9        Q.    Okay.  Are you ready to resume?
10       A.    Yes.
11       Q.    Okay.  And so you were you dealing --
12   you mentioned you were dealing -- you started
13   dealing with Suzanne Moore who was out of the
14   Chattanooga, Tennessee corporate office with
15   respect to your leave issues?
16       A.    Yes.
17       Q.    And you also said you were dealing with
18   her supervisor as well?
19       A.    I end up talking to --
20       Q.    Kathy --
21       A.    -- the management before they hook me
22   up with Susan Moore.  She was the one that, you
23   know, transferred me to Susan Moore.  Because I
24   knew Kathy number, I think that's the one they

Page 296

1       A.    I believe Spanish.

2       Q.    But you don't know?

3       A.    No.

4       Q.    LaShon Myle Kyle?  What does that

5   person have to do with your lawsuit?

6       A.    Nothing.

7       Q.    Okay.  Gayle G-a-y-l-e, Lea, L-e-a?

8       A.    Yeah, nothing.

9       Q.    Okay.  Matt Inyart, I-n-y-a-r-t,

10  Inyart?

11      A.    No, nothing.

12      Q.    Doesn't have anything to do with your

13  lawsuit?

14      A.    Not with my lawsuit.

15      Q.    Okay.  Melissa Hanson?

16      A.    Knew exactly what I used to, but really

17  it's nothing to do with the lawsuit, if I don't

18  have her as a witness.

19      Q.    What is it, Fabi I-l-e-s?

20      A.    Nothing.

21      VIDEOGRAPHER:  Excuse me, Counsel, I should

22  end this tape now.

23          The time is 4:14 PM.  This is the end

24  of tape 3 and we're going off the video record.

Page 297

1                    (Whereupon, a short break was

2                    taken.)

3        VIDEOGRAPHER:  The time is 4:24 PM.  This is

4   the beginning of tape 4.  We are back on the

5   video record.

6   BY MS. MORAN:

7        Q.    Mr. Tyson, what is root cause analysis?

8        A.    Another word for reason.

9        Q.    Pardon?

10       A.    I felt like it was another word for

11   reason.

12       Q.    Okay.  So let me read to you the

13   sentence where it comes up.  You have -- you

14   served Kelvin Walsh with production requests and

15   you asked for any e-mails, mailings, written

16   correspondence of any kind, facsimiles, logs,

17   quality management system, required

18   documentation, incident reports, corrective and

19   preventative action reports, root cause

20   analysis, OSHA and safety laws, quality

21   coordinator, monthly report and the like

22   regarding the investigation that a workplace

23   infraction by any of the aforementioned persons

24   or other persons involved in said investigations

Page 314

1    job, we could have discussed another position.
2    But I never was even tested for the spotters
3    job, so they don't know if I could have done it
4    or not.
5        Q.   Okay.  So it's really that six month
6    period that is bothersome to you?
7        A.   It was more bothersome then, yes.
8        MS. MORAN:  Okay.  That's all I have.
9        MR. DAVIES:  Mr. Tyson, as we discussed off
10   the record I have a whole series of questions to
11   ask you as well.  I gave you the option of
12   continuing this evening or setting another date,
13   you chose to set another date and we agreed upon
14   Thursday, June 1 at 11 AM, here at the offices
15   of Jackson Lewis in Chicago, correct?
16       MR. TYSON:  Yes, sounds good.
17       MR. DAVIES:  I don't intend to send you a
18   notice of a deposition for it, it's just a
19   continuation of this deposition, but those are
20   the agreements, correct?
21       MR. TYSON:  Yes.
22       COURT REPORTER:  Jodi, do you want the
23   transcript?
24       MS. MORAN:  Yes, please.