IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

MORRIS TYSON )
)
)
)
PLAINTIFF, )
)
VS. ) CASE No. **15-cv-02288-CSB-EIL**
)
KENCO LOGISTIC SERVICES, LLC, et al. )
and MARS, INC. )
DEFENDANTS. )

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56., Plaintiff, Morris Tyson, appearing *pro se,* submits this opposition to the pending Motion for Summary Judgment, on file herein, to demonstrate to the Court that there is a genuine issue of material fact in this case that precludes the entry of a judgment as a matter of law.

This opposition is based upon and supported by the following Points, the pleadings and papers on file, the affidavits and exhibits attached hereto, and any argument that the Court may allow at the time of hearing.

Plaintiff became disabled in May of 2013 and was unable to work and was placed on FMLA. Plaintiff received notice from the Hartford, Defendant Kenco's, third party benefit administrator, on or about August 9, 2013 that his FMLA would be ending on August 12, 2013 hereto attached as **Defendant's evidence 000099-Exhibit A.**

According to **Defendant's evidence 000099-Exhibit A**, the document instructed Plaintiff to speak with Human Resources about work options and to that end Plaintiff's wife spoke with Edith, the HR Administrator regarding work options.

**Defendant's evidence 000099-Exhibit A** has a notation supporting that Plaintiff had contacted Human Resources as instructed.

Again on August 12, 2013, according to **Defendant's evidence 000098-**hereto attached as **Exhibit B**, Plaintiff contacted Defendant Kenco regarding work options and Defendant Kenco's position on his status.

From August 9, 2013, Plaintiff sought to return to work in any capacity that could have included modified work.

Plaintiff was told that the General Manager, Kelvin Walsh, indicated that Plaintiff could not return to work unless he was 100%.

Plaintiff was seeking a disposition on his status with the Kenco Company, since he was not being allowed to return to work by the General Manager, Kelvin Walsh. On August 19, 2013, the Human Resource Manager, Len Szplett contacted Cathy Phillips inquiring what could be done to keep him in an unpaid leave category hereto attached as **Defendant Kenco's evidence 000096-97 Exhibit C.**

**Defendant Kenco's evidence 000096 Exhibit C**, Cathy Phillis, Benefits Manager, replies to Szplett's query made, on Wednesday, August 21, 2013 at 6:43 pm, stating that Plaintiff's leave could be extended "beyond 30 days if necessary (by utilizing the interactive process under the ADAA)." It also goes on to say, in that same document that Suzanne Moore, the Benefits Administrator, stated that

she could "certainly set him up using a Medical Personal Leave of Absence." Under the Americans with Disability Act a reasonable accommodation is an unpaid leave of absence.

Defendant Walsh, refused to allow Plaintiff to return to work in any capacity. That is a violation of the Americans with Disability Act; hence forcing Plaintiff to take the least desirable accommodation. Moreover, the warehouse associate job description and spotter job description clearly state that a reasonable accommodations can be made to accommodate a disability hereto attached as **Exhibit D**.

During the relative time of Plaintiff's FMLA expiring, Plaintiff was between doctor's visits, as Plaintiff was not schedule to see his doctor until four (4) weeks from July 23, 2013 and thereby was under his care. Most notably, this doctor's note gave a prognosis of "Good" and a disability status of "Temporary" hereto attached as **Defendant's evidence 000106-Exhibit E**. Whereas, Plaintiff's immediate past doctor's note of June 25, 2013 gave no prognosis or disability status hereto attached as **Defendant's evidence 000111-Exhibit F**.

Plaintiff upon returning to his doctor in August of 2013, informed him that he could not return to work unless he was a 100%; thereby prompting his doctor not to release him, even with restrictions, as it would forfeit Plaintiff's job protection under the ADAA because Walsh refused to accommodate Plaintiff in any working capacity at the Mars Manteno facility.

Plaintiff's doctor did not release Plaintiff to work as a spotter or any modified work based upon the Defendant's refusal to return Plaintiff back to work in any capacity. Furthermore, Plaintiff's doctor could not lawfully release him without clarification as to the job duties and tasks that Plaintiff would be engaged in.

Plaintiff on an ongoing and regular basis contacted Defendants about returning to work in any capacity, including a spotter. To no avail, Plaintiff was not returned to work.

Finally, after months of not being returned to work; Plaintiff's doctor stipulated that work options were to be discussed in February of 2014 hereto attached as **Defendants evidence 000069-Exhibit G.**

A discussion ensued regarding Plaintiff's return to work hereto attached as **Defendants evidence 001793-001800-Group Exhibit H.** Despite this discussion, Plaintiff was still not returned to work.

Again, Plaintiff on an ongoing and regular basis contacted Defendants about returning to work, as a spotter or in any capacity. To no avail, Plaintiff was not returned to work. Plaintiff objects to and disputes the fact that Plaintiff's doctor would not release him for work.

Plaintiff was driving by in August of 2014 and saw a banner outside the Mars Manteno facility advertising for Spotters.

Plaintiff contacted Defendant asking why he had not been returned to work as a Spotter, since they were actively advertising for Spotters. Plaintiff also indicated that he felt as though he had been discriminated against because they failed to return him to work as a Spotter; while actively advertising for Spotters.[1] In addition, Plaintiff also learned that other Spotters had been hired while Plaintiff was on an unwanted, unlawful and forced Medical Leave of Absence. These Spotters included, but were not limited to: Kelly Campbell[2] hired November 11, 2013 and Thomas Leach hired August 18, 2014

---

[1] Accordingly Defendant Kenco was advertising for Spotters on Craigslist and other employment job boards hereto attached as **Exhibit I**
[2] Refer to Defendants evidence in 2015CA1590 Exhibit A hereto attached as **Exhibit I part 2**

see **Exhibit J** attached hereto Mark Baker and Al Cross were hired as Spotters in May and June of 2013 refer to **Exhibit J**.

In addition, Defendant had a number of other open positions that Plaintiff could have been performed or been accommodated. Pointedly, Defendant hired to work at the Mars Manteno Facility at least 96 persons between August 9, 2013 and August 26, 2014 in various warehouse positions.[3] For example, on August 13, 2013 Jacque Morrison was hired as a Temporary hereto attached as **Exhibit K** Defendant's Verified Response in IDHR and EEOC Charge numbers respectively; **2015CF0169 and 21BA42134**[4]. Another example was Vernon Henry[5] who was hired in as a temp through the Reserve Network in December of 2013 hereto attached as **Exhibit L** Defendant's Verified Response in IDHR and EEOC Charge numbers respectively; **2015CF0034 and 21BA42027.**[6] Peter Monstwillo was also hired as a temp in December of 2013 and it is cited as such in another charged filed by Mr. Henry; **2015CF1315 and 21BA503333.**[7] Stephanie Dumas was hired in April of 2014, as a first shift lead, who was not certified to drive a fork truck; thereby restricting her job tasks to working inside the office. Dumas was also given a premium shift. Plaintiff could have performed that modified version of a Lead worker with ease. Derrick Dixon[8] was also hired as a temp hereto attached as **Exhibit M** Defendant's Verified Response in IDHR; **2015CF1828** and a number others, not to mention other Spotters who were hired during the time in which Plaintiff sought to return to work in any capacity.

Defendant also offered into evidence in IDHR/EEOC 2015CA1804 and 2015CA2495 hereto attached as **Exhibit N** a list of employees and job titles. For the record, Defendant stated the job titles to be: Spotter, Warehouse Worker, Supervisor, Lead, Clerk-Warehouse, Coordinator, General

---

[3] This number does not include the number of positions that Plaintiff was unqualified for or was not a warehouse/production position.
[4] Employee hire date cross-references with Exhibit J
[5] Temporary employees were hired through a Temporary agency as a prerequisite to permanent employment. Defendant had so many temporary employees that it had an onsite manager from Prologistixs to manage the temps.
[6] Employee hire date cross-references with Exhibit J
[7] Employee hire date cross-references with Exhibit J
[8] Employee hire date cross-references with Exhibit J

Manager, Engineer, Clerk-HR, Technician, Maintenance, Manager, and HR Generalist. These titles correlate to the persons who were hired during the time Plaintiff sought to come back to work from August of 2013 to August of 2014.

Consequently, beyond certainty based upon Defendant's own evidence Defendant had jobs available that Plaintiff could have performed with and without accommodations.

Defendant also made an accommodation for a newly hired employee Mark Baker. Baker was hired in May 29, 2013. Baker was injured on November 1, 2013 hereto attached as **Exhibit O** and began his disability regarding a corrective medical procedure on or about March 04, 2014 hereto attached as Defendant's evidence 001777-001778-**Exhibit P.** Baker was working as the window clerk also known as the shipping and receiving clerk. Upon information and belief Baker worked in that position until he was released in November 2014.

Defendant also paid Plaintiff disproportionally to other non-black Spotters, hereto attached as **Exhibit Q** even Spotters who did not meet Defendants minimum requirements of having a CDL (Commercial Driver's License) such as John Montgomery and Mark Baker who was a recent hire. Jay Elliott also made a material misrepresentation to the IDHR/EEOC with respect to Plaintiff's pay hereto attached as **Exhibit Q part 2**

In addition, Defendants V.P. of Legal, Jay Elliott, appeared on behalf of Defendant during the January 6, 2016 Fact Finding Conference held at the IDHR on behalf of the IDHR and EEOC hereto attached as **Defendants evidence Group Exhibit R 0000978-981, 001088-1090, & 0000203** . An objection was raised on Plaintiff's behalf refer to **Group Exhibit R 0000978-981**. Elliott was hired by Defendant Kenco in November of 2014 and situated in Chattanooga, TN. Any reasonable person could concur that he had no relevant knowledge; but participated in the fact finding forum intentionally stating mistruths and blatant lies to intentionally and willfully evade the law, obstruct

justice, defraud the court and the administration of justice that mislead the tribunal into making adverse decisions that caused Plaintiff irreparable harms. This was an unconscionable obstruction and evasion of justice and culpability, as well as, it was unlawful, unethical, perjurious and a fraud on the court and the administration of justice.

Elliott knew that a witness must have firsthand knowledge to be a witness; Plaintiff is assured of this as Elliott stated to an investigator on October 12, 2015 by email hereto attached as **Exhibit S**

> "NOTE — she was not employed by Kenco until after Mr. Henry was terminated. So I am not sure what value her attendance in person at the fact-finding conference will provide. I will be the Kenco representative answering the charge, including the specific allegations therein."

Consequently, if Elliott new that this was applicable to Lori Varvel, he could not have known that it was not applicable to him as well. Furthermore, **Defendants evidence 0001088-90 Exhibit R** clearly outlines the eligibility requirements for both parties and specifically states that an attorney cannot attend on behalf of party ¶ 2 **Defendants evidence 0001090 Exhibit R**. Elliott's actions were deceitfully wicked and premediated, as he also had prior knowledge that Defendant no longer had access to the employees it used to manage and stated so on March 4, 2015 regarding IDHR/EECO charge number 205CA1464 and 21BA50433 hereto attached as **Exhibit T**. Defendant and Elliott perjured themselves.

In addition, it is believed that Elliott's employment arrangement with Kenco was premediate to obstruct, impede, commit fraud on the court and thwart justice. Defendant's policy as it relates to hiring exempt employees states in ¶ 4 of CP-HR-1002 the following hereto attached as **Defendant's evidence Exhibit 5 submitted in support of Defendant Kenco's position statement to IDHR/EECO charge 2015CF0034 & 21BA42027-Exhibit U:**

> "4. VP level and above positions will not be posted through the internal process. Those positions will be filled through nominations by VPs or above to be submitted to the Group President and CFO for final approval."

Consequently, this policy infers that Executive Officers of the company, including but not limited to the Group President and CFO, had to be a part of this contrived scheme for Jay Elliot to become V.P. of Legal, as their approval is required.

It is also believed that Elliott was not admitted to practice law in the State of Illinois during the time he was representing Defendant Kenco at the Illinois Department of Human Rights.

Last but not least, Defendant has policies that Control their records hereto attached as **Exhibit V ISO-QE.4.2.4.001** that provides evidence of conformity to requirements and the effective operation of our Kenco Quality Management System (KQMS). Records including policies, procedures, protocols and logs are to be kept for a specified amount of time according to Defendants agreement the term was seven (7) years hereto attached as **Exhibit W.**

Defendant was asked to produce in discovery standard work regarding the job functions and tasks of the Spotter position. Defendant failed to do so; despite Defendant being held to codified standards of compliance to the Food Safety and Modernization Act and 21 CFR. However, Defendant was able to produce in IDHR/EEOC Charge 2015CA1590/21BA50524 its Exhibit G-Yard Spotting Procedure hereto attached as **Exhibit X**. The procedure in great detail outlines the essential job functions and references the WI (Work Instructions) 7.5.1.002 that was requested from Defendant. The procedure at no time mentions lifting as an essential or occasional function; therefore, Defendant told a blatant mistruth about Plaintiff's lifting restrictions interfering with his ability to perform his job as a Spotter. Plaintiff believes that Defendant refused to produce this document, as this would have been a "smoking gun" to shoot a hole in one of their contrived scenarios about Plaintiff's return to work.

**Exhibit Y** are the Certifications from the Illinois Department of Human Rights certifying/authenticating that the documents referenced are true and correct copies.

**LEGAL STANDARD**

The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "Conversely, to avoid summary judgment, the nonmovant need only designate specific facts showing that there is a genuine issue for trial." *Makaeff v. Trump Univ., LLC,* 736 F.3d 1180, 1189 (9th Cir. 2013) (citation and quotation marks omitted). The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.,* 251 F.3d 1252, 1257 (9th Cir. 2001). "Where conflicting inferences may be drawn from the facts, the case must go to the jury." *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.,* 752 F.3d 807, 818 (9th Cir. 2014) (citation and quotation marks omitted).

**ARGUMENT**

Plaintiff basis his argument of the aforementioned reasons and facts, as well as, the attached exhibits and pleadings that establish the fact that there is a genuine issue of material fact in this case that precludes the entry of a judgment as a matter of law.

**CONCLUSION**

Based on the foregoing, I request that the Court deny the Motion for Summary Judgment.

DATED this 21st day of August, 2017.

Respectfully submitted by:

_/s/ Morris J. Tyson_
Morris Tyson Pro Se
547 Regent Road
University Park, Il 60484
815.295.4592

## CERTIFICATE OF SERVICE

Please take notice that on August 21, 2017 I, Morris Tyson, hereby, certify that I did file an OPPOSITION TO MOTION FOR SUMMARY JUDGMENT with the Central District of Illinois Urbana Division in the foregoing matter of Case No. 15-cv-02288-CSB-EIL and have served the persons identified on the docket's service list via Notice of Electronic Filing generated by the Court's CM/ECF system.

Pro Se *Morris J. Tyson*
MORRIS TYSON
547 Regent Road
University Park, Il 60484
815.295.4592

Kimberly J. Overbaugh
Thomas R. Davies
Harmon & Davies, P.C.
2306 Columbia Ave
Lancaster, PA 17603

Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 North Michigan Ave., Suite 2500
Chicago, IL 60601